IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES ANTHONY GEPHART, | No. 2:12-CV-1743-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-motion for summary judgment (Doc. 23).

///

///

///

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on September 3, 2009.  In the application, plaintiff claims that disability began on September 5, 1985.  Plaintiff claims that disability is caused by a combination of a "mental disorder" and diabetes.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on January 12, 2011, before Administrative Law Judge ("ALJ") William C. Thompson, Jr.  In a January 28, 2011, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): psychotic disorder, not otherwise specified;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform the full range of work at all exertional levels except he is limited to work involving simple instructions and limited public contact;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on May 10, 2012, this appeal followed.

# II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ's decision is "internally inconsistent" with respect to limitations in social functioning resulting from mental impairments; and (2) the ALJ erred in rejecting the opinion of examining physician Dr. Les Kalman.

**A.     Evaluation of Mental Impairments**

In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations.  See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to record pertinent findings and rate the degree of functional loss.  See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

/ / /

1   Plaintiff argues that the ALJ failed to follow the required procedures because the
2   findings regarding limitations in social functioning are unclear and internally inconsistent. As to
3   social functioning, the ALJ stated:

> In social functioning, the claimant has moderate difficulties, The state agency psychologist described the claimant as pleasant and he typically interacts appropriately with treatment providers. He has friends and enjoys going to the library. His medical records do document some instances of inappropriate behavior toward medical center staff and while incarcerated, the claimant experienced hostility toward others. Thus, the claimant has a mild limitation in social functioning.

According to plaintiff, this portion of the hearing decision is internally inconsistent in that, in the first sentence, the ALJ states that plaintiff had moderate difficulties but, in the last sentence, the ALJ states that plaintiff has only mild limitations. Additionally, plaintiff notes that the ALJ described instances in which plaintiff acted appropriately with medical personnel and also instances in which he did not. Plaintiff argues: "The court cannot begin to guess what the ALJ was actually thinking – was he crediting moderate limitations in the area of social functioning or mild limitations in social functioning when he created the RFC assessment."

While plaintiff's point is well taken in that it is unclear whether the ALJ found that plaintiff was mildly or moderately limited in social functioning, the court finds that any lack of clarity is irrelevant. As the ALJ correctly noted, plaintiff's mental impairment does not meet the established criteria because he does not have any marked limitations. Thus, whether his social functioning limitations were mild or moderate makes no difference.[1]

**B.   Evaluation of Dr. Kalman's Opinion**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual,

---

[1] The court notes that plaintiff does not challenge the ALJ's determination that plaintiff's testimony of disabling limitations in social functioning was not credible.

4

than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /

/ / /

As to Dr. Kalman, the ALJ stated:

> Les P. Kalman, M.D., Psy.D., a psychiatrist, examined the claimant on January 14, 2011, at his attorney's request. The claimant stated that he had been diagnosed with paranoid schizophrenia and had engaged in self-injurious behavior, including suicide attempts, in the past. He last drank approximately a week ago. Dr. Kalman noted that the claimant was alert and oriented in all spheres, but appeared disheveled and unkempt. His affect was blunted, but his thought process logical. His memory and concentration were impaired and he could not complete serial threes, though he could spell "world" backwards. He could perform calculations, but his insight and judgment were impaired [Ex. 17F].
>
> * * *
>
> Dr. Kalman found that the claimant has moderate limitations in his abilities to maintain attention and concentration, interact with the general public and coworkers, and complete a normal workday. He is markedly limited in his abilities to work in coordination with others and respond appropriately to supervisors. A routine, repetitive job would not serve as a stressor that would exacerbate his psychological symptoms, though production quotas and a demand for precision would increase his level of impairment. He will likely be absent from work more than three to four times per months [Ex. 17F]. Dr. Kalman examined the claimant and his opinion is partially consistent with the medical evidence. The claimant gets along well with his treatment providers and Dr. Lampe described him as pleasant. This suggests that the limitations Dr. Kalman imposed on the claimant's abilities to interact with coworkers and supervisors are extreme. In addition, there is no evidence in the record to support Dr. Kalman's statements that the claimant would be absent from work more than three or four times per month or that certain stressors would exacerbate his condition. The evidence does demonstrate that the claimant has some difficulty interacting with others and would likely struggle to complete complex instructions. For these reasons, I give some probative weight to his opinion.

The court finds no error. As the ALJ stated, the functional limitations opined by Dr. Kalman are extreme and, with respect to the likelihood that plaintiff would be absent from work, not supported by the record. Moreover, it appears that the ALJ largely credited Dr. Kalman's opinion. Specifically, Dr. Kalman opined that plaintiff could perform a routine, repetitive job which is consistent with the ALJ's residual functional capacity finding that plaintiff is limited to work involving only simple instructions. Additionally, the ALJ limited plaintiff's contact with the public, consistent with Dr. Kalman's opinion.

/ / /

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 15) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 23) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  September 27, 2013

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE